AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia



| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**INFORMATION ASSOCIATED WITH WHATSAPP<br>MESSENGER ACCOUNTS ASSOCIATED WITH<br>TELEPHONE NUMBER: 202-849-1255** | )<br>)<br>)<br>)<br>)<br>)    Case No.  1:17SW620 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A (Property to be Searched)

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B (Particular Things to be Seized)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952(a), 960(a), and 963 | Conspiracy to Import 1 Kilogram or more of Heroin and 500 Grams or more of Cocaine |
| 21 U.S.C. §§  952(a) and 960(a) | Importation of 1 Kilogram or more of Heroin |

The application is based on these facts:

See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA:
Thomas Traxler

*Applicant's signature*

Michael Tarantino, Special Agent, HSI

*Printed name and title*

Sworn to before me and signed in my presence.

Date:  Sept. 26, 2017

/s/

John F. Anderson
United States Magistrate Judge

*Judge's signature*

City and state:  Alexandria, Virginia

Hon. John F. Anderson, U.S. Magistrate Judge

*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the WhatsApp accounts associated with the following telephone number:

202-849-1255

that is stored at premises owned, maintained, controlled, or operated by WhatsApp Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by WhatsApp**

To the extent that the information described in Attachment A is within the possession, custody, or control of WhatsApp, including any messages, records, files, logs, or information that have been deleted but are still available to WhatsApp, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), WhatsApp is required to disclose the following information to the government for each account (or account associated with any IMEI number) listed in Attachment A:

a.      All identity and contact information, including full name, email address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

b.      All past and current usernames, account passwords, names and telephone numbers associated with the account;

c.      The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.      All activity logs including all IP logs and other documents showing the IP address, date, and time of a subscriber's use of the account;.

e.      All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f.      All data and information associated with any user profile, including photographs, "bios," and profile backgrounds and themes;

g.      All photographs and images associated with the subscriber's account;

h.      All location data associated with the account, including geolocation sharing information with other accounts;

i.      All data and information that has been deleted by the user;

j.      A list of all of people, telephone numbers, groups, or accounts that are linked to the WhatsApp account, including through contact lists, third-party applications or websites, including Facebook, the identity and contact information for each linked

person, telephone number and account, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

k.    All privacy and account settings;

l.    All information about connections between the account and third-party websites and applications;

m.    All records pertaining to communications between Whats App and any person or account regarding the user or the user's WhatsApp account, including contacts with support services, and all records of actions taken, including suspensions of the account.

n.    All communications between WhatsApp and the account; and

o.    All communications or other messages sent or received by the account including all communications between the account and any other WhatsApp account or associated third-party website or application account including all retained (1) instant messaging, (2) text, picture, video, and audio media messaging, (3) group chats, (4) status updates; and (5) geolocation sharing information.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 846, 952(a), 960(a), and 963, involving the operator or creator of the account, Rosemberg Majano, and/or Jose Orellana Montalvo, including, for each user ID identified on Attachment A, information pertaining to the following matters:

a.    Any conversations related to the possession, distribution, or importation of controlled substances;

b.    Any records of telephone calls or other communications with Rosemberg Majano, Jose Orellana Montalvo, or other co-conspirators;

c.    Any pictures or other digital media related to the possession, distribution, or importation of controlled substances;

2

    d. Any lists of customers or suppliers of controlled substances, and related identifying information;

    e. Types, amounts, and prices of controlled substances trafficked as well as dates, places, and amounts of specific transactions;

    f. Any information related to sources of controlled substances (including names, addresses, phone numbers, or any other identifying information);

    g. All bank records, checks, credit card bills, account information, and other financial records.

    h. Records or other information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA



| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH WHATSAPP MESSENGER ACCOUNTS ASSOCIATED WITH THE FOLLOWING TELEPHONE NUMBER:<br><br>202-849-1255<br><br>THAT IS STORED AT PREMISES CONTROLLED BY WHATSAPP INC. | Case No. 1:17-SW-620 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael Tarantino, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with the WhatsApp account (the "SUBJECT ACCOUNT") associated

with the following telephone number: 202-849-1255 ("SUBJECT ACCOUNT NUMBER").

The SUBJECT ACCOUNT is stored at premises owned, maintained, controlled, or operated by

WhatsApp Inc. ("WhatsApp"), a mobile messaging company headquartered in Menlo Park,

California. The information to be searched is described in the following paragraphs and in

Attachment A.

2.      I am a Special Agent of the United States Department of Homeland Security,

Homeland Security Investigations (HSI). I am assigned to the Washington Dulles International

Airport ("Dulles Airport"). My duties as a Special Agent with HSI include, but are not limited to,

the investigation of federal laws governing the importation and exportation of controlled

substances. I have received training in general law enforcement, including training in Titles 18

and 21 of the United States Code. I am a graduate of the Federal Law Enforcement Training Center at Glynco, Georgia.

3.     During the course of my duties, I regularly investigate passengers who are suspected of smuggling contraband, namely controlled substances, into the United States in violation of the United States Code. As a result of my training and experience, I am familiar with the manner in which controlled substances are smuggled into the United States through major international airports.

4.     This affidavit is made in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A) to require WhatsApp to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the SUBJECT ACCOUNT. This affidavit does not contain every fact known to me regarding this investigation, but rather contains information necessary to demonstrate probable cause in support of the search warrant. The facts and information contained in this affidavit are based on my personal knowledge as well as information obtained from other federal law enforcement officers.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Rosemberg Majano and Jose Orellana Montalvo have violated Title 21, United States Code, Sections 841(a)(1), 846, 952(a), 960(a), and 963. There is also probable cause to search the SUBJECT ACCOUNT for information described in Attachment A for evidence, fruits, and instrumentalities of these crimes, as described in Attachment B.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrants because it is "a court of

2

competent jurisdiction," as defined by 18 U.S.C. § 2711, and as used in 18 U.S.C. §§ 2703(a),

(b)(1)(A) & (c)(1)(A).  Specifically, this Court is a "district court of the United States (including

a magistrate judge of such a court) . . . that . . . has jurisdiction over the offense being

investigated."  § 2711(3)(A)(i).

## SUMMARY OF PROBABLE CAUSE

7.     This search warrant relates to an investigation into a conspiracy to import cocaine

and heroin into the United States through Washington Dulles International Airport ("Dulles

Airport") on a flight from El Salvador.  Two suspected co-conspirators have already been

charged: Rosemberg Majano, a national of El Salvador and lawful permanent resident of the

United States, and Jose Orellana Montalvo, a naturalized United States citizen originally from El

Salvador.  As explained below, the evidence suggests that Orellana Montalvo used the

SUBJECT ACCOUNT NUMBER to communicate, or attempt to communicate, with other

potential co-conspirators in connection with the charged offenses.  Furthermore, the evidence

suggests that Orellana Montalvo used WhatsApp in connection with a number of these

communications.

### A. Current Charges

8.     Majano and Orellana Montalvo were originally charged via criminal complaint in

the Eastern District of Virginia (Case No. 1:17-mj-373) with conspiracy to import more than 5

kilograms of cocaine, in violation of Title 21, United States Code, Sections 952, 960, and 963.

Both Majano and Orellana Montalvo were arrested on August 10, 2017.  On August 14, 2017, at

a combined preliminary and detention hearing, the Court (1) found that probable cause supported

the charges in the criminal complaint, (2) ordered Majano's detention pending trial, and (3)

released Orellana Montalvo on a personal recognizance bond.

3

9.     On September 6, 2017, the Grand Jury in the Eastern District of Virginia returned an indictment (Case No. 1:17-cr-204) charging Majano and Orellana Montalvo with four counts: (1) conspiracy to import one kilogram or more of heroin and five hundred grams or more of cocaine, in violation of Title 21, United States Code, Sections 952(a), 960(a), and 963; (2) importation of one kilogram or more of heroin, in violation of Title 21, United States Code, Sections 952(a) and 960(a); (3) importation of five hundred grams or more of cocaine, in violation of Title 21, United States Code, Sections 952(a) and 960(a); and (4) conspiracy to possess with the intent to distribute one kilogram or more of heroin and five hundred grams or more of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

### B. Majano's Importation of Cocaine

10.     On or about the afternoon of August 10, 2017, Majano arrived at Dulles Airport, in Loudoun County, Virginia, within the Eastern District of Virginia, on Avianca Airlines flight #582. The flight had originated in San Salvador, El Salvador.

11.     That afternoon, at approximately 2:50 p.m., Officer Rhazouani of the United States Customs and Border Protection ("CBP") encountered Majano in the international baggage claim area to conduct a routine roving baggage examination. While examining Majano's luggage, Officer Rhazouani discovered bags of powdered milk and ground coffee. According to a close-out report prepared by the CBP, Majano stated that the coffee was for him but that the milk was for family and friends. In a subsequent interview, Officer Rhazouani told me that Majano stated the coffee was for him but the milk was for kids.

12.     Officer Rhazouani opened one of the bags to examine its contents. At that point, Majano became very nervous. He was shaking and sweating, and suddenly stopped talking. Inside the bag, Officer Rhazouani found a clear plastic bag with a white powdery substance.

4

Officer Rhazouani contacted other CBP officers for assistance. One CBP officer brought a K9 dog, which positively alerted for narcotics odor on Majano's luggage. Another CBP officer conducted a test of the white powdery substance, and it yielded positive results for the properties of cocaine.

13.     At approximately 3:12 p.m., Majano was placed in hand restraints and escorted to a holding cell. Before entering the holding cell, CBP officers obtained a cell phone from Majano's person.

14.     CBP officers examined the remaining bags of household items, such as coffee and milk, and discovered additional plastic bags with a white powdery substance concealed within them. The bags of white powdery substance were placed on a scale for weighing, and the scale registered the weight at 8.377 kilograms.

15.     Since the defendants' arrest, the United States Drug Enforcement Administration has conducted an analysis of the substance seized from Majano's luggage. The analysis revealed that the substance contained 3.854 kilograms of cocaine hydrochloride and 4.005 kilograms of heroin hydrochloride.

**C. Majano's Assistance**

16.     At approximately 3:30 p.m. on August 10, I arrived at the secondary inspection area and interviewed Majano. I advised Majano of his *Miranda* rights, which he waived. Majano then made a number of statements over a series of conversations with me. Majano stated that he was to be paid $500.00 to deliver the packages of household items to another individual (referred to herein as "CC-1"). He also stated that he was to be met at the airport by CC-1. Majano claimed that he was told the name of CC-1, but did not know the individual.

17.    Majano agreed to attempt to make contact with CC-1 and was sent into the Dulles Airport international arrivals waiting area at approximately 4:07 p.m. While being escorted to the international arrivals waiting area, Majano told HSI Special Agent Jay Culley that he had been instructed to proceed to a hotel in the event that he was not met at the airport.

18.    Before Majano entered the international arrivals waiting area, law enforcement provided him with his cell phone. Majano gave Special Agent Culley the number for his cell phone: 770-374-7042.

19.    Majano initially waited in the international arrivals area. Eventually, however, he received a phone call from a blocked number, and the caller instructed him to go downstairs, an area of Dulles Airport designated for commercial pick-up. Majano, surveilled by HSI agents, therefore went down to the lower level, first to the inside cabstand and then outside to the commercial pick-up area. Around this time, HSI agents observed Orellana Montalvo waiting in the outside area.

20.    After no one approached Majano, Majano proceeded back up to the international arrivals area, near a Starbucks. Around this time, at approximately 4:54 p.m., I observed Orellana Montalvo in the vicinity, walking towards the Starbucks. Another agent heard Orellana Montalvo on the cell phone exclaiming, "the f****** guy moved!" I heard Orellana Montalvo angrily say, "I'm out."

21.    Physical/personal contact was never made between Majano and CC-1 at Dulles Airport. At approximately 5:07 p.m., Majano received a text on his cell phone from a number with an El Salvadorian country code, indicating for him to go to Pollo Campero, a restaurant located in Herndon, Virginia. Majano subsequently received a phone call from a number originating in El Salvador. The caller told Majano that his people saw four people following

6

Majano and got scared.  The caller urged Majano to take a cab to Pollo Campero rather than an Uber, as Majano had suggested.

### D.  Pollo Campero

22.     HSI agents dropped Majano off at Pollo Campero at approximately 6:47 p.m. Majano initially went into the restaurant and waited.

23.     During that time, HSI agents, including myself, observed a white minivan driving suspiciously in the area.  The minivan drove past the restaurant several times, turning into and around surrounding businesses.  We observed this behavior over the course of approximately one hour.  Another HSI agent observed the driver of the minivan and recognized him as Orellana Montalvo, whom the agent had seen at the airport earlier.  Based on my training and experience, the driving behavior of the white minivan was consistent with that of performing counter-surveillance.

24.     At around 7:10 p.m., Majano received a call from an unknown number.  The caller instructed him to leave Pollo Campero and walk to a hotel across the street.

25.     Majano eventually left Pollo Campero and began walking towards a bus stop in front of the restaurant.  At approximately 8:00 p.m., the white minivan drove up to him.  Majano subsequently informed HSI agents that he was instructed to get in the van.  Majano did not get in, and the van drove away.

### E.  Arrest of Orellana Montalvo

26.     HSI special agents stopped the white minivan as it drove away.  Orellana Montalvo was the driver and sole occupant.  As the agents approached the vehicle, they observed Orellana Montalvo slamming his hands against the steering wheel.

7

27.     Special Agent Martinez, who was present at the stop, observed a cell phone sitting on the front seat of the van. In plain view, Special Agent Martinez observed that the cell phone was on and opened. Special Agent Martinez could see the cell phone's call log in plain view and took a picture of it. The agents seized the cell phone.

28.     The call log contained the number *67 (770) 374-7042. As noted in paragraph 18, 770-374-7042 was the number associated with Majano's cell phone. The "*67" preceding Majano's number indicated that the call had been blocked so that the number calling Majano could not be identified. The call log reflected that the last call with Majano's cell phone occurred at 7:48 p.m., approximately ten minutes before Orellana Montalvo attempted to pick up Majano. In total, the call log reflected at least three telephone calls to or from Majano's cell phone.

29.     In addition, the call log of the cell phone found in Orellana Montalvo's car reflected at least three communications—likely either calls or messages—with an El Salvadorian number using "WhatsApp Audio." According to the call log, the communications appear to have taken place between approximately 6:00 p.m. and 7:00 p.m. on August 10.

30.     Furthermore, the call log of the cell phone found in Orellana Montalvo's car reflected approximately ten additional communications using "WhatsApp Audio." The call log, however, did not display a phone number for the other party to those communications. Instead, the other party was simply described in the call log as "Pops." The ten or so communications with "Pops" appear to have occurred between approximately 5:59 p.m. and 7:42 p.m. on August 10.

31.     Based on my training and experience, the timing, circumstances, and volume of calls with the El Salvadorian number and "Pops" suggest that Orellana Montalvo was urgently

8

trying to reach associates (or vice versa) using WhatsApp Audio prior to making contact with Majano at Pollo Campero. The use of WhatsApp for this purpose is significant. According to its website, WhatsApp uses end-to-end encryption to ensure that messages and calls over its platform are secured so that only the parties to the communication can read or listen to them.

32.     In addition, the fact that at least one of the numbers contained an El Salvadorian country code is significant, given that Majano's flight originated from El Salvador and Majano received instructions from numbers originating in El Salvador.

**F. Search Warrant**

33.     On August 21, 2017, the Honorable Ivan D. Davis, United States Magistrate Judge for the Eastern District of Virginia, issued a search warrant for the cell phone seized from the white minivan that Orellana Montalvo was driving (Case No. 1:17-sw-518). In executing the search warrant, HSI Intelligence Research Specialist Jeff Wise identified the SUBJECT ACCOUNT NUMBER as the number for the cell phone seized from the white minivan that Orellana Montalvo was driving.

*WhatsApp Messenger*

34.     According to the WhatsApp website, WhatsApp is a cross-platform mobile messaging application that allows a user to exchange messages without having to pay service fees for use. WhatsApp is available for use as an application on an iPhone, BlackBerry, Android, Windows, or Nokia telephone. WhatsApp does not use traditional cellular or wire communication lines for communications, but instead relies on internet access for communication. In addition to basic messaging WhatsApp users can create groups and send each other unlimited images and video and audio media messages.

35.     Users are required to subscribe to WhatsApp using their mobile phone number. Upon subscription, the WhatsApp Messenger confirms subscription by transmitting a message to the subscriber's telephone number. WhatsApp may also collect the user's name, picture, phone type, phone platform, registration date, information from the user's Facebook profile, and the user's address book from the user's phone.

36.     Specifically, the WhatsApp application allows its subscribers to communicate with other subscribers to the application or with subscribers to related third-party applications and websites using the following features: (1) instant messaging, (2) text, picture, video, and audio media messaging, (3) group chat; (4) status updates; and (5) geolocation sharing.

37.     Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access WhatsApp.

38.     In some cases, WhatsApp users will communicate directly with WhatsApp about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of

contacts between the user and the provider's support services, as well records of any actions

taken by the provider or user because of the communications.

39.     Given that the SUBJECT ACCOUNT appears to have had an active account with

WhatsApp as of August 10, 2017, the computers of WhatsApp are likely to contain all the

material described above.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

40.     I anticipate executing this warrant under the Electronic Communications Privacy

Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by

using the warrant to require WhatsApp to disclose to the government copies of the records and

other information (including the content of communications) particularly described in Section I

of Attachment B.  Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

## CONCLUSION

41.     Based on the aforementioned factual information, I respectfully submit that there

is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted

violations, of Title 21, United States Code, Sections 841(a)(1), 846, 952(a), 960(a), and 963 may

be located in the SUBJECT ACCOUNT described in Attachment A.  I therefore request that the

Court issue the proposed search warrant.  Because the warrant will be served on WhatsApp,

which will then compile the requested records at a time convenient to it, reasonable cause exists

to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Michael Tarantino
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
On September 26 2017

/s/

THE HONORABLE JOHN F. ANDERSON
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the WhatsApp accounts associated with the following telephone number:

202-849-1255

that is stored at premises owned, maintained, controlled, or operated by WhatsApp Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

### I.      Information to be disclosed by WhatsApp

To the extent that the information described in Attachment A is within the possession, custody, or control of WhatsApp, including any messages, records, files, logs, or information that have been deleted but are still available to WhatsApp, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), WhatsApp is required to disclose the following information to the government for each account (or account associated with any IMEI number) listed in Attachment A:

a.      All identity and contact information, including full name, email address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

b.      All past and current usernames, account passwords, names and telephone numbers associated with the account;

c.      The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.      All activity logs including all IP logs and other documents showing the IP address, date, and time of a subscriber's use of the account;

e.      All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f.      All data and information associated with any user profile, including photographs, "bios," and profile backgrounds and themes;

g.      All photographs and images associated with the subscriber's account;

h.      All location data associated with the account, including geolocation sharing information with other accounts;

i.      All data and information that has been deleted by the user;

j.      A list of all of people, telephone numbers, groups, or accounts that are linked to the WhatsApp account, including through contact lists, third-party applications or websites, including Facebook, the identity and contact information for each linked

person, telephone number and account, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

k.   All privacy and account settings;

l.   All information about connections between the account and third-party websites and applications;

m.   All records pertaining to communications between Whats App and any person or account regarding the user or the user's WhatsApp account, including contacts with support services, and all records of actions taken, including suspensions of the account.

n.   All communications between WhatsApp and the account; and

o.   All communications or other messages sent or received by the account including all communications between the account and any other WhatsApp account or associated third-party website or application account including all retained (1) instant messaging, (2) text, picture, video, and audio media messaging, (3) group chats, (4) status updates; and (5) geolocation sharing information.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 846, 952(a), 960(a), and 963, involving the operator or creator of the account, Rosemberg Majano, and/or Jose Orellana Montalvo, including, for each user ID identified on Attachment A, information pertaining to the following matters:

a.   Any conversations related to the possession, distribution, or importation of controlled substances;

b.   Any records of telephone calls or other communications with Rosemberg Majano, Jose Orellana Montalvo, or other co-conspirators;

c.   Any pictures or other digital media related to the possession, distribution, or importation of controlled substances;

2

d.   Any lists of customers or suppliers of controlled substances, and related identifying information;

e.   Types, amounts, and prices of controlled substances trafficked as well as dates, places, and amounts of specific transactions;

f.   Any information related to sources of controlled substances (including names, addresses, phone numbers, or any other identifying information);

g.   All bank records, checks, credit card bills, account information, and other financial records.

h.   Records or other information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS**

**RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to Title 28, United States Code, Section 1746, that the information contained in this declaration is true and correct. I am employed by WhatsApp Inc., and my official title is _____. I am a custodian of records for WhatsApp Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of WhatsApp Inc., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.  such records were kept in the ordinary course of a regularly conducted business activity of WhatsApp Inc.; and

    c.  such records were made by WhatsApp Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date    Signature